| | |
|---|---|
| SUSAN M.N., | |
| Plaintiff, | |
| v. | 1:25CV375 |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

## ORDER AND MEMORANDUM OPINION
## OF UNITED STATES MAGISTRATE JUDGE

The plaintiff Susan M.N. ("Susan") has sought review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and a period of disability.[1] The Court has considered the certified administrative record and dispositive briefs from each party. Because the Administrative Law Judge's ("ALJ") decision is legally correct, supported by substantial evidence, and susceptible to judicial review, the Court affirms the decision of the ALJ, as set forth below.

## I. PROCEDURAL HISTORY

Susan filed an application for disability insurance benefits and a

period of disability in January of 2022, alleging a disability onset date of June 3, 2021. (Tr. 153-54.) The applications were denied initially and upon reconsideration. (Tr. 92-93, 98-100.) After a hearing, the ALJ determined on April 3, 2024 that Susan was not disabled under the Act. (Tr. 17-45.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for review. (Tr. 1-6.)

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. Docket Entry 5. By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings

in this case pursuant 28 U.S.C. § 636(c). Docket Entry 15.

security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Susan is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 404.1520, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

Here, the ALJ determined at step one that Susan had not engaged in substantial gainful activity since the alleged onset date of June 3, 2021. (Tr. 19.) The ALJ next found the following severe impairments at step two: Lyme disease, cerebral edema/encephalitis, degenerative disc disease of the cervical spine, and cognitive impairment. (Tr. 19.) At step three, the ALJ found that Susan did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 20.)

2

The ALJ next set forth Susan's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of light work with the following exceptions:

> She can lift or carry 25 pounds occasionally and 20 pounds frequently. She can sit, stand, or walk for 6 hours during an 8-hour workday. She can frequently balance, stoop, kneel, crouch, and crawl. She can frequently climb stairs, ramps, ropes, ladders, or scaffolds. She can perform simple, routine, repetitive tasks. She can follow 1- to 3-step instructions. She is limited to low-stress work environments. She is limited to performing work at a non-production pace. She can frequently interact with coworkers and supervisors. She can occasionally interact with the public. She is limited to work environments that undergo no more than occasional changes in routines. She can concentrate on tasks for two-hour intervals. She can follow written instructions for the performance of job duties. She can frequently perform tasks requiring near visual acuity.

(Tr. 21.) At the fourth step, the ALJ determined that Susan was unable to perform her past relevant work. (Tr. 25.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Susan could perform. (Tr. 25.)

IV. DISCUSSION

In her appeal, Susan asserts only that "[t]he ALJ erred by not scheduling a consultative examination." Docket Entry 8 at 5. The record demonstrates otherwise, as set forth below.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted). The ALJ discharges the duty to develop the record where "the record is adequate to make a determination regarding a disability claim." *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000); *accord. Kersey v. Astrue*, 614 F. Supp. 2d 679, 693-94 (W.D. Va. 2009). To demonstrate that the ALJ failed to develop the record, a claimant must show that "evidentiary gaps" existed that prejudiced his or her rights, *Blankenship v. Astrue*, No. 3:11-CV-5, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27. 2012) (citing *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)), and that he or she "could and would have adduced evidence that might have altered the result,'" *id.* (quoting *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)).

Importantly though, claimants are "in a better position to provide

3

information about [their] own medical condition[s]." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "'[T]he ALJ is not required to function as the [plaintiff's] substitute counsel, but only to develop a reasonably complete record.'" *Gregory v. Saul*, No. 3:19cv84, 2019 WL 5280968, *8 (E.D. Va. Sept. 3, 2019) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). Furthermore, the ALJ also does not have a duty to "'go to inordinate lengths to develop a [plaintiff's] case.'" *Gregory*, 2019 WL 5280968, *8 (quoting *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977)).

ALJs *may* order consultative exams and have the discretion to decide whether one is necessary. 20 C.F.R § 416.919a; *Cooke v. Berryhill*, 767 F. App'x 539, 540 (4th Cir. 2019) (unpublished) (citation omitted); *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (unpublished). "[T]he decision to order a consultative examination is committed to the discretion of the ALJ, and where the record as a whole provides sufficient, unambiguous, and non-conflicting evidence to support the ALJ's decision, a consultative examination is not required." *Zook v. Comm'r of Soc. Sec.*, No. 2:09cvl09, 2010 WL 1039456, at *6 (E.D. Va. Feb. 25, 2010) (citation omitted). The ALJ may order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or

decision on [the] claim." 20 C.F.R. § 404.1519a(b).

Some examples of when a consultative examination may be appropriate include when:

(1) [t]he additional evidence needed is not contained in the records of [the claimant's] medical sources;

(2) [t]he evidence that may have been available from [the claimant's] treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control, such as death or noncooperation of a medical source;

(3) [h]ighly technical or specialized medical evidence that [is] need[ed] is not available from [the claimant's] treating or other medical sources; or

(4) [t]here is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established.

*Id.* § 404.1519a(b)(1)-(4).

Last, when evidence is incomplete, insufficient, or inconsistent, the ALJ has a choice between recontacting a

4

medical source for clarification, requesting additional existing evidence, asking the claimant to undergo a consultative examination, or asking the claimant or others for more information. 20 C.F.R. § 404.1520b(b)(2)(i)-(iv).

Here, the administrative record in this case (which exceeds 600 pages) is adequate, substantial evidence that supports the RFC, and the ALJ had no duty to develop the record further. As demonstrated in the hundreds of pages of medical records, the evidence showed that Susan underwent treatment for a variety of conditions over several years. (*See generally* Tr. 299-628.) The record also contains the medical opinions of two consultative examiners. (Tr. 572-76, 586-92). The ALJ summarized the record and found both severe physical and mental impairments. (Tr. 19-25.) There was sufficient evidence for the ALJ to determine if Susan was disabled without requiring the ALJ to further develop the record by ordering a third consultative evaluation or performing some other act.

More specifically, first, the ALJ noted that despite Susan's alleged impairment in balance, the medical evidence did not show that either her gait or coordination was significantly impaired on a chronic basis. (Tr. 22, 532 (9/2/2021 "Coordination: Intact FTN, and RAM in bilateral upper extremities. HTS intact. Normal casual gait. Mild difficulty with tandem gait."), 574 (10/8/2022 "COORDINATION/STATION/GAIT:

The claimant has a normal gait. She walks at a normal pace. She is able to stand on her toes, stand on her heels, stand on one foot at a time, squat all the way down to the floor and rise, do tandem walk and heel-to-shin maneuver."), 562 (8/30/22 normal gait).)

Second, the ALJ noted that despite alleged vision issues, Susan's ophthalmologist concluded that with corrective lenses she did not have any visual limitations. (Tr. 22, 568.) Third, the ALJ noted that Susan could still perform common manipulative activities despite alleging a cervical impairment that caused frequent numbing in her left fingers. (Tr. 22, 527, 532, 573, 575, 580, 582.)

Fourth, the ALJ acknowledged that Susan's autoimmune encephalitis impaired her cognition and her ability to express herself to some degree and that she demonstrated below average concentration, but the ALJ also pointed to average functioning on examination in immediate retention, delayed recall, recent memory, remote memory, and fund of information, as well as average intellectual functioning. (Tr. 23, 580, 582, 589-91.)

Fifth, the ALJ considered the prior administrative findings and opinion evidence. For example, the ALJ found persuasive a June 2, 2021 decision he had previously issued addressing one of Susan's older disability claims from a prior period, which concluded that Susan could perform a reduced range

of light work. (Tr. 23-24, 49-59.) In support, the ALJ pointed out that both Susan's prior and her instant disability claims were substantially similar, the status of her autoimmune encephalitis had remained largely the same between claims, and the findings of the prior decision were not stale because it was issued the day before the alleged onset date of disability in the present claim. (Tr. 23-24, 49-59.)

Finally, the ALJ thoroughly considered the opinions of multiple medical professionals as follows:

Dr. Frank Virgili, M.D.: The ALJ found mostly persuasive the opinion of this non-examining state agency physician, who concluded that Susan could perform a reduced range of medium work with postural, communicative, and environmental limitations. (Tr. 24, 80-81.) The ALJ explained that it was only mostly persuasive because it did not adequately account for Susan's left-hand limitations. (Tr. 24, 80-81.) Nevertheless, the opinion was consistent with other medical evidence showing Susan's muscle strength remained intact, as well evidence of her activities of daily living, which included caring for pets (a dog, a cat, and chickens), cooking, and doing craft projects. (Tr. 24, 80-81, 575, 588, 572.)

Dr. Agustin Flore: The ALJ also considered this consultative examiner's October 2022 physical assessment which concluded that

Susan could perform a reduced range of medium work with postural limitations. (Tr. 24, 572, 576.) The ALJ concluded that the opinion was persuasive because it was supported by the findings of the examination, and because it was consistent with Susan's medical history. (Tr. 24.) The ALJ also found mostly persuasive non-examining state agency physician Dr. Lillian Horne's administrative medical finding that Susan could perform the full range of medium work. (Tr. 24, 69-70.) The ALJ explained that the administrative medical finding was only mostly persuasive because it did not account for Susan's need for postural limitations. (Tr. 24.)

Dr. Christoper Eckstein, M.D.: Next, the ALJ found this medical opinion slightly persuasive. (Tr. 24.) Dr. Eckstein identified Susan's cognitive and speech issues, as well as her lack of coordination in her left hand, and also concluded that Susan would need two or more unscheduled breaks a day due to fatigue and cognitive problems. (Tr. 24, 627-28.) However, the ALJ pointed out that the supporting evidence for the unscheduled breaks was unclear in that Dr. Eckstein's treatment notes did not document that Susan complained of chronic fatigue, and her fiancé, who saw Susan on a daily basis, did not mention fatigue in his third-party function report. (Tr. 24, 627-28, 211-18.)

Dr. April Strobel-Nuss: The ALJ found the opinion of this non-

6

examining psychologist persuasive. (Tr. 24.) Dr. Strobel-Nuss concluded that Susan could perform simple, routine tasks; that she could interact appropriately with coworkers and supervisors; and that her adaptive functioning was sufficient for performing simple tasks. (Tr. 24, 70-72.) The ALJ noted that a second non-examining psychologist, Dr. Kristin Wiltrout, Ph.D., reached similar conclusions. (Tr. 24, 82-84.) The ALJ concluded that these assessments were consistent with a prior mental status examination, with Susan's fiancé's assessment of her ability to follow written instructions and adapt, with her statement that she could manage her psychological symptoms without medication, and with her activities of daily living, including shopping online, managing her finances, and doing crafts. (Tr. 24-25, 216-17, 589-91, 587, 214, 588.)

Michelle Rich: The ALJ also considered the opinion of this second consultative examiner, a licensed psychological associate. (Tr. 25.) Ms. Rich found that while Susan could understand and follow directions and relate to others, she may have difficulty with retention and performing simple, routine, and repetitive tasks, and may have difficulty with day-to-day work activity due to easily being overwhelmed. (Tr. 25, 591.) However, the ALJ only found Ms. Rich's opinion somewhat persuasive because it was inconsistent with the functional assessments written by Drs. Strobel-Nuss and Wiltrout, described in

greater detail above. (Tr. 24.) In light of this, the ALJ limited Susan to the performance of light work with the numerous additional mental, postural, communicative, and environmental limitations set forth above in the RFC. (Tr. 21.)

As demonstrated at length above, the ALJ provided a thorough review of the medical record (and other evidence) and analysis of Susan's impairments. He also sufficiently explained his RFC determination, having considered evidence that included (but was not limited to) Susan's medical records repeatedly showing normal or relatively normal physical and mental examinations, testimony, and extensive activities of daily living. The ALJ supported each determination with multiple citations to the record and an explanation as to how he came to his decision. Thus, the ALJ also reasonably exercised his discretion in not ordering a third consultative exam and did not err in deciding not to do so.

Finally, Susan has not identified why another consultative examination might yield a different result in this case. She does not actually contest any of the findings made above by the ALJ. Instead, she asserts that the "ALJ's own statements at the hearing establish his concern that the record was inadequate, and that the claimant most likely would not be able to obtain a sufficient medical source statement[.]" Docket Entry 8 at 11.

As explained below, however, a closer

7

examination of the administrative hearing testimony does not bear this out. It instead shows the following exchange between the ALJ and Susan's counsel:

ALJ: [T]he medical records seem to indicate that the status has been essentially as it was at the time of the last decision, which I made – the day before her alleged onset date on this application was June 2nd of 2021, when I signed that decision. And the medical records seem to indicate that her presentation is the same on imaging and in visits with the doctor. Is there a chance of getting a treating source statement, do you think?

...

ATTY: The only thing I would say really has changed since the last hearing is just the age category she's in now.

ALJ: Yeah. Okay. Well, I mean, the last decision put her – and frankly, the major impairment was, and I think continues to be, with the encephalitis and the demyelinating disease. So, I mean, I think I put her at less than the full range of light on that basis. I don't know that I see anything that would make me think that she would be reduced to sedentary on the basis of physical functioning. Obviously, I'm open to

whatever you have to say, but I'm not seeing anything that sort of jumps out at me and says, yeah, that's the direction that we need to go. Particularly in light of the consultative exam by Dr. Flores. You know, it's a consultative exam, so it is what it is, but he kind of implies somewhere between light and medium, with 50 pounds occasionally, 25 pounds frequently, sitting, standing, and walking all for six out of eight hours.

...

So, as I look at this case, I see two potential paths forward. One is we go fishing in the same creek. Another is that there's some treating source statement that shows some limitation that would either get her to less than sedentary based on, I don't know, degeneration of balance and the ability to stand up or something similar, or maybe some visual degeneration that would preclude her from work. I mean, I – it's not my place as a doctor to sort of speculate as to what's going on, because I'm not a doctor. But I – that's why I'm thinking maybe a treating source statement.

And I know doctors, particularly doctors at Duke, don't like giving treating source statements. They like to just have their word taken for it that

8

their patients are unable to work. But if we could maybe send the standard form along and say, hey, you know, the judge really needs this evaluated in this context, of, you know, how much sitting, standing, and walking, how much concentration difficulties she'll have, how much balance difficulty she'll have, something like that might give me something I could hang my hat on with a little more certainty.

ATTY: Yeah. I could certainly send something out, Your Honor.

ALJ: Okay. Do we want to continue to take testimony then today, or do we want to come back after we've got something? Assuming we get something, and if not, I mean, maybe we can talk about what the next step might be if we can't get a treating source statement. You know, I don't know that another consultative exam is going to add much we don't already have.

...

Well, let's put a pin in it for now, and if we need to reconvene after I've got some additional records, we can do that. Ms. Nelson, I appreciate your testimony today. I think what I really need in this case is an assessment from a doctor

that'll give me a better picture of how your condition has changed since the last decision I made on your last application two years ago. So, I think that we're going to stop taking testimony at this point, and your lawyer can talk to you more about what the next steps are going to be in terms of getting that. Okay?

CLMT: Okay. Thank you.

(Tr. 41-45.)

As shown above, the ALJ did not "identify inadequacies in the record" as Susan is alleging. Docket Entry 8 at 5. In fact, the evidence—which included an October 2022 physical consultative exam from Dr. Flores (Tr. 572-76) and an October 2022 psychological consultative exam from Ms. Rich, a licensed psychological associate (Tr. 586-92)—was sufficient for the ALJ to make a finding that Susan was not disabled.

The ALJ essentially explained that the evidence presented supported this finding. (Tr. 41-43.) For example, the ALJ informed Susan and her counsel that the evidence presented did not appear to support a greater limitation than the previous ALJ decision of June 2, 2021, where she was not found to be disabled. (Tr. 41.) Susan's counsel in fact actually noted that "[t]he only thing [he] would say really has changed since the last hearing [was] the age category she's in now." (Tr. 42.) Consequently, the ALJ

9

encouraged Susan's counsel to obtain a medical source statement, not because the evidence was insufficient, but to provide Susan with a further opportunity to demonstrate her disability.

Moreover, the ALJ did review additional medical opinion evidence that Susan submitted *after the June 2023 hearing*, a "Physical Capacities Evaluation" provided by Dr. Chris Eckstein, M.D. in July of 2023. (Tr. 32, 625-628).[2] As explained above, the ALJ only found this opinion slightly persuasive because of a lack of supporting evidence regarding the purported need for additional breaks in Dr. Eckstein's treatment notes and because a third-party function report from Susan's fiancé did not mention fatigue. (Tr. 24.) Susan has not specifically challenged this finding.

In short, when considered in context, the ALJ did not state that the record was inadequate to render a decision. Instead, the ALJ told Susan and her counsel at the administrative hearing that additional medical opinion evidence might strengthen her disability claim, which otherwise appeared to be insufficient to support a finding of disability based upon his

preliminary assessment. Additional medical opinion evidence was then submitted. The ALJ then weighed it along with all the other evidence (which already included two consultative examination opinions), found it slightly persuasive, and concluded that Susan was not disabled under the Act.[3] Susan's counsel also had ample opportunity to present any additional evidence, request additional time to obtain evidence, or to request the ALJ's assistance in obtaining evidence. But he did not.

Susan acknowledges that it is "rare" for a court in the Fourth Circuit to find error for failure to order a consultative examination and a "tough row to hoe" for a claimant to establish such an error. Docket Entry 8 at 4, 10. This is not one of those rare cases and Susan has not pointed to any such error.

The record does not demonstrate that the ALJ abused his discretion or somehow erred by not ordering a third consultative examination or taking some other remedial action. *See French v. Berryhill*, No. EDCV 17-0566-KS, 2018 WL 1322106, at *4 (C.D. Cal. Mar. 13, 2018) ("[E]vidence

---

[2] Susan asserts that Dr. Eckstein's opinion was "a conclusory, unsupported (per the ALJ) statement from a physician that did not assist in clarifying the record that the ALJ acknowledged was insufficient." Docket Entry 8 at 3. However, the record was not insufficient here, the RFC is supported by substantial evidence, and Susan has not

demonstrated any likelihood that a third consultative examination would warrant a different outcome in this matter.

[3] Because he did not take testimony from the vocational expert ("VE") at the hearing, the ALJ relied upon a set of vocational interrogatories later taken from the VE. (Tr. 283-92.)

10

of the conditions that existed at the time of the consultative examination, as well as evidence of the conditions that were diagnosed after the examination, is insufficient for the Court to conclude that the ALJ's failure to order a second consultative examination was unreasonable. Other courts have similarly concluded that an ALJ's reasoned judgment in this regard should be respected.") (collecting circuit and district court cases).

Susan's remaining objections are not persuasive. She contends that the ALJ erred by not ordering a third consultative examination (or taking some other remedial action) and erred further by not justifying his failure to do so. Docket Entry 8 at 9. But here, the record is sufficiently clear here why the ALJ appropriately resolved Susan's disability application on the record before him, as supplemented after the hearing. The remainder of Susan's objections involve discussions of 20 C.F.R. §§ 404.1519a(b) and 404.1520b(b). Docket Entry 8 at 9-11. However, those objections are not based upon the medical record and other evidence, but instead upon Susan's mistaken insistence that the ALJ conceded at the administrative hearing that the record here was inadequate, which is not the case. Because the record was adequate to render a decision, 20 C.F.R. §§ 404.1519a(b) and/or 404.1520b(b) do not warrant a different outcome here. None of Susan's objections have any merit.

V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

JoAnna Gibson McFadden
United States Magistrate Judge

April 27, 2026
Durham, NC

11